# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:19-cv-00183-MR

| | |
|---|---|
| DAMON M. MOBLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| FNU TANKERSLY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on Defendant Tankersly's Motion for Summary Judgment [Doc. 24] and Defendant's two motions to strike Plaintiff's unauthorized surreplies [Docs. 34, 38].

**I.    PROCEDURAL BACKGROUND**

On June 7, 2019, the Plaintiff Damon M. Mobley, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging the violation of his civil rights while incarcerated at the Henderson County Jail in Hendersonville, North Carolina. [Doc. 1]. The Plaintiff's claims against Defendant FNU Tankersly,[1] identified as a courtroom bailiff, for assault and the use of excessive force on Plaintiff survived this Court's initial review. [Doc. 10 at 6].

---

[1] The Court will direct the Clerk to update the docket in that matter to reflect Defendant Tankersly true full name, Jonathan Tankersly.

Plaintiff brings an Eighth Amendment claim against the Defendant based on the alleged use of excessive force. [See Doc. 1]. Plaintiff claims that Defendant violently attacked him, "body slamming" Plaintiff while Plaintiff was in restraints and throwing Plaintiff into a wall. Plaintiff further alleges that, when he failed to comply with Defendant's orders to put his hands behind his back (because Plaintiff was already handcuffed in front), Defendant bent his fingers back. [Doc. 1 at 4, 7]. For his injuries, the Plaintiff alleges that he suffered two fractured fingers, swelling, and "damage to [his] already fragile spinal cord."[2] [Doc. 1 at 5, 7]. For relief, the Plaintiff seeks $7.7 million in damages. [Id. at 5].

On June 21, 2020, Defendant Tankersly filed a Motion for Summary Judgment. [Doc. 24]. Defendant Tankersly argues that he is entitled to summary judgment because Plaintiff failed to exhaust available administrative remedies before bringing this suit, because he did not use excessive force on Plaintiff, and because he has qualified immunity with regard Sto the Plaintiff's claims. [Doc. 25 at 6-18]. As to Plaintiff's assault claim, Defendant asks the Court to exercise supplemental jurisdiction over it and argues that the Court should dismiss it because a finding that Defendant

---

[2] Plaintiff attached an x-ray report to his Complaint. The report reflects Plaintiff suffered a single broken pinky finger that was described in two different places in the report. [Doc. 1 at 9-10].

used reasonable force is fatal to Plaintiff's state tort assault claim. [Id. at 18-19].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 26]. Pursuant to the Roseboro Order, Plaintiff's response was due by July 7, 2020. [Id.]. On July 20, 2020, Plaintiff filed his response to Defendant's summary judgment motion. [Doc. 31]. Plaintiff's response was dated July 14, 2020.[3] [Id. at 1, 8]. Defendant replied to Plaintiff's response. [Doc. 32]. Thereafter, Plaintiff filed three unauthorized surreplies to Defendant's reply. [Docs. 33, 36, 37]. Defendant has moved to strike these surreplies.[4] [Docs. 34, 38]. Plaintiff responded to Defendant's motions to strike. [Doc. 39]. Plaintiff also filed a

---

[3] In a letter filed the same day as his response, Plaintiff contends that he had been recently transferred from Piedmont Correctional Facility ("Piedmont") to Foothills Correctional Institute ("Foothills") and that the Court's Roseboro Order had been sent to Piedmont. [Doc. 30]. Plaintiff states that he did not receive the Roseboro Order until that day and asks the Court not to "[punish] him for something [he] had no control over." [Id.]. On July 13, 2020, Plaintiff filed a Notice of Change of Address with the Court reflecting his new address at Foothills. [Doc. 27]. This Notice was dated June 28, 2020. [Id.]. As such, because Plaintiff timely updated his address with the Court, the Court will construe Plaintiff's letter as a motion to deem Plaintiff's response timely filed and consider Plaintiff's late response in adjudicating the present summary judgment motion.

[4] A surreply may be filed only with the Court's leave on proper motion and "when warranted." LCvR 7.1(e). Plaintiff did not seek leave of Court to file his surreplies nor are they warranted. The Court will, therefore, grant Defendant's motions to strike Plaintiff's unauthorized surreplies.

3

letter requesting a case status update and inquiring into filing a "motion to settle." [Doc. 42].

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not

4

rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

Defendant Tankersly argues that the Plaintiff failed to exhaust his administrative remedies prior to filing this action and, therefore, his

5

Complaint should be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"). [Doc. 25 at 6-8].

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo

6

v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Finally, it is well-settled that a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action; rather, he must fully exhaust all steps of the administrative process before filing his lawsuit. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011).

A prisoner, however, "need not exhaust remedies if they are not 'available.'" Ross v. Blake, 136 S. Ct. 1850, 1855 (2016) (quoting 42 U.S.C. § 1997e(a)). An administrative remedy is not "available" if a prisoner, "through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). A remedy is unavailable (1) where the procedure operates as a simple dead end because officials are unable or consistently unwilling to provide any relief to aggrieved inmates; (2) where the grievance process itself is so incomprehensible that no ordinary prisoner can discern or navigate it; and (3) where administrators prevent inmates from availing themselves of remedies by way of

machination, misrepresentation, or intimidation. Ross, 136 S. Ct. at 1858-60.

Here, in his Complaint, Plaintiff acknowledged that his claim arose while he was confined at Henderson County Jail and that the Jail has a grievance procedure. [Doc. 1 at 17]. Plaintiff also acknowledged that the grievance procedure "covers some or all of [his] claims." [Id.]. He further alleged that he filed a grievance "concerning the facts relating to [his] complaint" … "on the kiosk located in the jail." [Id. at 18]. In his grievance, Plaintiff claimed that he "was not receiving proper medical attention or the means to fix [his] injuries as the doctor ordered." [Id.]. Plaintiff admits, however, that he did not appeal the result of his grievance, claiming that "they never did a grievance process, they just told me that I would see a nurse when they got time to see me…" [Id.]. Plaintiff then, inappositely, goes on to provide a reason why he "did not file a grievance," claiming "because most grievances go unread, its [*sic*] better to just fill out a sick call, it gets read & responded to sooner than a grievance." [Id. at 19]. Finally, Plaintiff states "I can't precisely remember if it was actual "grievances" or "sick calls" every time…. Please excuse me if Im [*sic*] wrong." [Id.].

Defendant's uncontroverted forecast of evidence on the exhaustion issue shows the following. The Jail has established a three-step procedure

for submission and review of inmate grievances. [See Doc. 25-6 at ¶¶ 6-9: Declaration of Tod McCrain; see Doc. 25-7 at 2-5]. Inmates are informed about the inmate grievance policy when they arrive at the Jail. [Doc. 25-6 at ¶ 4]. Inmates are to first attempt to resolve their grievances informally. [Doc. 25-6 at ¶ 6]. If informal resolution is unsuccessful, inmates may file a written grievance within 14 days of the complaint or issue. [Doc. 25-6 at ¶ 6]. A Jail supervisor ensures that the grievance is investigated and resolved or denied. [Doc. 25-6 at ¶ 7]. If the grievance is not resolved to an inmate's satisfaction, the inmate may appeal the finding to Todd McCrain, the Henderson County Jail Administrator, or his designee within five (5) days of the original findings. [Doc. 25-6 at ¶¶ 2, 8]. When an inmate appeals a grievance result, McCrain or his designee either confirms the original finding or initiates corrective action. The inmate is sent a written response to the appeal. [Doc. 25-6 at ¶ 9].

McCrain reviewed and provided all grievances filed by Plaintiff from July 31, 2018, the date of the incident in question, to the time Defendant filed his summary judgment motion. [Doc. 25-6 at ¶ 10]. McCrain also reviewed and provided all other General Inquiries, Classification Inquiries, Food Service Inquiries, Inmate Inquiries, Visitation Inquiries, and Medical and Mental Health requests filed by Plaintiff during that time. [Doc. 25-6 at ¶ 12].

None of these grievances, inquiries, or requests relate to the excessive force claim against Defendant Tankersly before the Court now.[5] [See Doc. 25-6 at ¶ 14; see Doc. 25-8 at 2-33; Doc. 25-9 at 2-52; Doc. 25-10 at 2-52; Doc. 25-11 at 2-58; Doc. 25-12 at 2-45].

In response to Defendant's forecast of evidence on exhaustion, Plaintiff admits that he "never filled out a grievance," but claims it was "because the incident didn't happen in the jail" and that "Officer Tankersly is not part of the jail staff." [Doc. 31 at 4]. Plaintiff also claims that, "the jail's grievance process is horrible, and it takes 'weeks' for it to be read & replied." [Id.]. These claims regarding the grievance process at the Jail are insufficient to forecast evidence of unavailability of administrative remedy. See Ross, 136 S. Ct. at 1858-60. Plaintiff has not shown that "through no fault of his own" he was "prevented from availing himself of it." See Moore, 517 F.3d at 725.

In sum, Plaintiff has provided no evidence from which a reasonable jury could conclude that he exhausted his administrative remedies. See Anderson, 477 U.S. at 248. There is, therefore, no genuine issue of material

---

[5] A few of Plaintiff's medical requests after the incident relate to Plaintiff's broken pinky finger. [Doc. 25-12 at 2-5]. In several others, he requests copies of his "grievances, sick calls, and xrays" related to his injuries from the incident at issue here. [Doc. 25-12 at 10; see id. at 11, 15, 30]. These requests, however, are not sufficient to invoke let alone exhaust the Jail's administrative remedy procedure.

fact as to whether the Plaintiff has exhausted his administrative remedies in this case.

Accordingly, Defendant Tankersly's Motion for Summary Judgment will be granted and the Plaintiff's claim against Defendant Tankersly will be dismissed without prejudice. Dillard v. Anderson, No. 2:13-CV-31-FDW, 2010 WL 9553022, at *2 n.2 (W.D.N.C. Sept. 6, 2010) (Whitney, C.J.). ("A dismissal for failure to exhaust administrative remedies is without prejudice.").

Defendant also argues that Plaintiff's excessive force claim should be dismissed on the merits. In construing the forecast of evidence in the light most favorable to Plaintiff as the non-movant, however, issues of material fact remain as to whether Defendant used excessive force on Plaintiff in violation of Plaintiff's rights under the Eighth Amendment. The Court, therefore, cannot dismiss Plaintiff's Complaint with prejudice.

Defendant also claims that he is entitled to qualified immunity because Plaintiff cannot show that Defendant's "limited use of force" violated any clearly established rights. [Doc. 25 at 16]. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine

11

whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted). Here, because the right at issue was clearly established and because there is a genuine dispute regarding whether Defendant's use of force was excessive, Defendant is not entitled to summary judgment on the issue of qualified immunity.

Finally, Defendant asks the Court to exercise supplemental jurisdiction over Plaintiff's assault claim. [Doc. 25 at 18 (citing Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); 28 U.S.C. § 1367(c)(3))]. Defendant argues that the Court should dismiss this claim because a finding that Defendant used reasonable force is fatal to Plaintiff's state tort assault claim. [Id. at 19]. The Court, however, has not found that Defendant's use of force on Plaintiff was reasonable as a matter of law. The Court declines to exercise

12

Case 1:19-cv-00183-MR   Document 43   Filed 02/10/21   Page 12 of 14

supplemental jurisdiction over Plaintiff's assault claim and it will be dismissed without prejudice.

## IV. CONCLUSION

In sum, the Court will dismiss Plaintiff's excessive force claim without prejudice for failure to exhaust administrative remedies. Defendant is not entitled to qualified immunity because genuine issues of material fact remain as to whether Defendant's use of force was excessive. The Court declines to exercise supplemental jurisdiction over Plaintiff's assault claim and will also dismiss it without prejudice.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Defendant Tankersly's Motion for Summary Judgment [Doc. 24] is **GRANTED** and the Plaintiff's excessive force claim against Defendant Tankersly is hereby **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's assault claim, which is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Tankersley's Motions to Strike Plaintiff's Surreplies [Docs. 34, 38] are hereby **GRANTED** and Docket Nos. 33, 36, and 37 are hereby **STRICKEN** from the record in this matter.

The Clerk is instructed to correct the docket in this matter to reflect Defendant Tankersly's true full name, Jonathan Tankersly.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: February 10, 2021

Martin Reidinger
Chief United States District Judge